IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MILTON O. McGINTY, et al.

      v.                  : Civil Action No. DKC 2005-1023

CHARLES R. PLAYER, JR., et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this "vanishing premium" insurance case are Plaintiffs' motion to remand this case to state court and to award attorneys' fees (paper 22), and Defendants' motions to dismiss (papers 19 and 20). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the court grants Plaintiffs' motion to remand, and therefore does not reach Defendants' motions to dismiss. The court also denies Plaintiffs' request for attorneys' fees.

**I. Background**

This case is one of many claims filed nationwide involving so-called "vanishing premium" life insurance policies. These policies were marketed on the premise that if the insured paid higher premiums for a fixed period, the policy would acquire enough cash value that the insured would no longer need to pay

premiums because the policy's accumulated value would pay those later premiums.

On January 13, 2005, Plaintiffs Milton O. McGinty, Doris E. McGinty, the Milton O. and Doris Evans McGinty Irrevocable Life Insurance Trust ("the Trust"), Lisa McGinty Newsome, Dana G. McGinty, and Derek G. McGinty[1] (collectively, "Plaintiffs") filed a civil action in the Circuit Court for Montgomery County against Defendants Charles R. Player, Jr. ("Player") and Jefferson Pilot Financial Insurance Company ("Jefferson Pilot"). (Paper 2, ex. 1). The complaint alleges the following: In December 1993 Milton and Doris McGinty consulted with Player, a certified public accountant with a Maryland business address, about estate planning options.[2] Player recommended creating an irrevocable life insurance trust funded by a life insurance policy on Milton and Doris McGinty, and he offered to select a policy to fund the trust. Player represented to them that he was experienced with and knowledgeable in life insurance products. (Paper 2, ex. 1, at 3).

---

[1] Lisa McGinty Newsome, Dana G. McGinty and Derek G. McGinty filed the civil action in their capacity as trustees of the Trust.

[2] Player was Milton McGinty's accountant for "many years." (Paper 20, ex. 1, at 1).

Player recommended that Milton and Doris McGinty apply for a "second to die" life insurance policy offered by Chubb Life Insurance Company of America ("Chubb"). Player allegedly told Plaintiffs that if they paid premiums of $79,776 for 10 years, the McGintys would have a 'paid up' life insurance policy worth $3,500,000. (Paper 2, ex. 1, at 4). Based on Player's representations, Plaintiffs executed an application for a Chubb policy, which Player signed as the agent for Chubb. Chubb accepted the application and issued Milton and Doris McGinty a policy. The policy was mailed to Plaintiffs after January 21, 1993.

The policy provided "second to die" life insurance totaling $3.5 million, but it did not expressly state that if the insureds, Milton and Doris McGinty, paid $79,776 per year for 10 years, the policy would be paid up. Plaintiffs concede that the policy requires payment of premiums beyond the 10-year period or coverage will terminate. They also concede that if either Milton or Doris McGinty remains alive in 2028 -- 35 years after the policy's issue date -- the policy reverts to its cash value rather than the $3.5 million value promised by Player. (Paper 2, ex. 1, at 5).

Plaintiffs state that they did not review the policy in detail, relying instead on Player's representations.

3

Plaintiffs' cursory review revealed no policy language on the first page that was inconsistent with Player's representations. The first page also lacked a statement on how long they were required to pay premiums.  The policy provides a 20-day right to cancel, which Plaintiffs did not exercise.

Milton McGinty then[3] sought reassurance by requesting an illustration from Chubb to confirm that the policy would be paid up if the $79,7776 premium was paid for 10 years.  The illustration they received, dated March 31, 1993, presumes that the insured would pay an "annual outlay" of $79,776 in years 1 through 10.  (Paper 31, ex. 2A., paper 2).  At the current value of 7.15%, the death benefit continues through year 35 but does not show a change of $0 in year 36.  At the assumed value of value of 6%, the death benefit changes to $0 in year 28; under the guaranteed value of 5.5%, the death benefit changes to $0 in year 15.  (Paper 31, ex. 2A, paper 2, ex. 1, at 6; paper 36 at 5).[4]  "To the unpracticed eye of Mr. McGinty, the 35-year

---

[3]  The complaint does not specify when Milton McGinty contacted Chubb.

[4]  In the complaint, Plaintiffs asserted that the illustration showed the death benefit of $3.5 million "even at the 'guaranteed value' of 5.5%."  In subsequent papers, Plaintiffs corrected this statement and agreed with Defendants that the illustration showed no death benefit in year 15 at 5.5% value and no death benefit in year 26 at the 6% value. (Paper 36, at 5).

schedule was not an indication that the policy would terminate in 35 years, but rather a schedule that could apply to any policy that ran for 35 years or less, such as the one he purchased." (Paper 2, ex. 1, at 6).  Plaintiffs made the premium payment over the next 9 years.  During that time, Jefferson Pilot became the assignee or other successor in interest to Plaintiffs' policy.

In January 2002, after making the tenth premium payment, Milton McGinty requested an illustration, which he received in February 2002.  It showed that if no further premiums were paid, the policy would lapse in year 18.  The schedule also indicated that in the 31st year, both the account value and the cash value would be $196,950 and the death benefit would be $3.5 million, but in year 32 all of these values would be $0.  (Paper 31, ex. B).  Plaintiffs contend that this illustration put them on notice of possible misrepresentations by Player.

Milton McGinty requested several more illustrations, which provided differing account values, death benefits, and lapse dates if no premiums were paid.  In the meantime, Milton McGinty began studying the policy and "found no support for Defendant Player's representations." (Paper 2, ex. 1, at 7).  He found that the policy did not contain a termination date for the payment of premiums, it had a termination date of 35 years, and

if either he or Doris McGinty remained alive after the termination date, the policy converted to its cash value.

In November 2002, Milton McGinty confronted Player about the policy. Plaintiffs contend that Player "insisted that the policy was a 'permanent paid up policy.'" (Paper 2, ex. 1, at 7). Plaintiffs allege that when Milton McGinty pointed out the policy's language indicating a termination date, "Player stated that he 'was not seeing the language (he) expected to see' but that he was certain that Plaintiffs had purchased a 'permanent, paid-up policy.'" (Paper 2, ex. 1, at 8). When Milton McGinty followed up later, Player said he was attempting to get answers and that he would get back with Plaintiffs as soon as possible. McGinty received a premium invoice in January 2003.

Plaintiffs filed a complaint in state court alleging claims of negligent misrepresentation against Player and Jefferson Pilot, professional negligence against Player, negligence against Jefferson Pilot, and breach of contract against Player. With respect to the claims against Player, Plaintiffs assert that Player failed to exercise reasonable care in communicating Plaintiffs' expectations to Chubb, in understanding the policy's terms and conditions, and in communicating these terms to Plaintiffs. They assert that Player breached his duty as a certified public accountant and licensed insurance agent by

recommending and creating an estate plan that was unsuitable for Plaintiffs' purposes, by selecting an inappropriate insurance policy for the estate plan, and by failing to discover and advise Plaintiffs that the plan was unsuitable.  Finally, they allege breach of contract for failing to provide an adequate estate plan and by failing to select a suitable insurance policy for purposes of the estate plan and the Trust.  The claims against Jefferson Pilot are, in part, based on Player's negligence and the doctrine of respondeat superior. (Paper 2, ex. 1).

On April 14, 2005, Jefferson Pilot[5] removed the lawsuit to this court asserting diversity jurisdiction. (Paper 1). Jefferson Pilot asserts that it is a Nebraska corporation with its principal place of business in New Hampshire; assumes[6] that Player is a Maryland citizen; and posits that Plaintiffs are citizens inter alia of Florida, the District of Columbia, or Maryland.  (Paper 1, at 3).  Jefferson Pilot contends that Player's status as a Maryland citizen does not destroy diversity because he was fraudulently joined -- his claims "cannot prevail

---

[5] Player did not participate in the removal action to federal court or join in the opposition to remand to state court.

[6] Because Player did not participate in the removal, he never had the opportunity to clarify whether he is a Maryland citizen.

as a matter of law" because the statute of limitations bars Plaintiffs' claims against Player.  (Paper 1, at 4).[7]

On May 13, 2005, Plaintiffs filed a motion to remand and asked the court to award costs and expenses for the removal. Plaintiffs assert that at least one of the plaintiffs is indeed a citizen of Maryland (Derek G. McGinty), (paper 22, ex. 2), and that their claims against Player are not time barred because they did not discover they had a claim against Player until February 2002.[8]

Jefferson Pilot objected to the motion to remand, arguing that Plaintiffs were on inquiry notice in 1993 when they received the policy and when they received the March 1993 illustration.  (Paper 31).  Jefferson Pilot points to language in the policy warning that the actual interest rate and results may vary. (Paper 31, at 3-4, 11-12).  It also questions Plaintiffs' assertion that the 2002 illustration was sufficient to put them on notice, but not the 1993 illustration, arguing

---

[7] If Player was served prior to removal and is a Maryland citizen, removal might also be improper even if no plaintiff is a Maryland citizen because a diversity action may be removed "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b).

[8] Plaintiffs suggest that the statute of limitations may be tolled for reasons that include fraud by an adverse party, but they do not specifically plead fraud in their complaint.

that the illustrations are so similar that any notice in the 2002 illustration was present in the 1993 illustration as well.

In addition, Defendants have filed motions to dismiss on grounds that include statute of limitations, collateral estoppel and failure to exhaust administrative remedies. (Papers 19, 20).

## II.  Standard of Review

It is well-settled law that the removing party bears the burden of proving proper removal.  *Greer v. Crown Title Corp.,* 216 F.Supp.2d 519 (D.Md. 2002) (citing *Mulcahey v. Columbia Organic Chems. Co.,* 29 F.3d 148, 151 (4th Cir. 1994)).  On a motion to remand, the court must "strictly construe the removal statute and resolve all doubts in favor of remanding the case to state court," which is indicative of the reluctance of federal courts "to interfere with matters properly before a state court."  *Richardson v. Phillip Morris Inc.,* 950 F.Supp. 700, 701-02 (D.Md. 1997) (internal quotation omitted); *see also Mulcahey,* 29 F.3d at 151.

Defendants must prove the existence of diversity jurisdiction by a preponderance of the evidence.  *See Momin v. Maggiemoo's Int'l, L.L.C.,* 205 F.Supp.2d 506, 510 (D.Md. 2002).

## III. Analysis

### A.   Fraudulent Joinder

The "fraudulent joinder" doctrine "permits removal when a non-diverse party is (or has been) a defendant in the case." *Mayes v. Rapoport,* 198 F.3d 457, 461 (4th Cir. 1999).  This doctrine allows the district court "to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction."  *Id.* To establish fraudulent joinder, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or that 'there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court.'"  *Hartley v. CSX Transp., Inc.,* 187 F.3d 422, 424 (4th Cir. 1999) (emphasis in original) (quoting *Marshall v. Manville Sales Corp.,* 6 F.3d 229, 232 (4th Cir. 1993)).  The burden on the defendant claiming fraudulent joinder is heavy:  The defendant must show that the plaintiff cannot establish a claim against the non-diverse defendant even after resolving all issues of fact and law in the plaintiff's favor.  *Marshall,* 6 F.3d at 232-33 (quoting *Poulos v. Naas Foods, Inc.,* 959 F.2d 69, 73 (7th Cir. 1992)).  In determining whether joinder is fraudulent, the court is "not bound by the allegations of the pleadings, but may instead 'consider the entire record, and determine the basis of joinder

by any means available.'"  *Mayes,* 198 F.3d at 464 (quoting *AIDS Counseling and Testing Ctrs. v. Group W. Television, Inc.,* 903 F.2d 1000, 1004 (4th Cir. 1990)).

### 1.   Limited Piercing of the Pleadings

In *Riverdale Baptist Church v. CertatainTeed Corp.*, 349 F.Supp.2d 943 (D.Md. 2004), this court explained that "successful fraudulent joinder/statute of limitations arguments occur in cases where the issue is fairly easy to determine, either from the face of the complaint or with resort to limited additional evidence, while courts facing more ambiguous factual situations reject such arguments." *Id.* at 949.  Accordingly, the court should make "only a limited 'piercing of the pleadings' for fraudulent joinder in statute of limitations cases." *Id.* at 950.  This is due, in part, to the practical reason of allowing the state court to resolve the status of the non-diverse defendant. *Id.*  Although Jefferson Pilot argues that Plaintiffs' claims are clearly time-barred, the question of when a plaintiff in these vanishing premium cases is on inquiry notice is often a question of fact that a jury must decide. *See, e.g., Wolinetz v. Berkshire Life Ins. Co.*, 361 F.3d 44, 50 (1st Cir. 2004) (concluding that the date on which plaintiff's claims against the insurance company accrued presented a jury question); *In re Gen. Am. Life Ins. Co. Sales Practices Litig.*,

11

391 F.3d 907, 912 (8th Cir. 2004) (stating that under Pennsylvania law, "[b]ecause neither the applicability of the discovery rule nor the content of the plaintiffs' reasonable expectations can be determined as a matter of law at this stage of the litigation, both issues should be submitted to a jury").

*But see Ross v. Citifinancial, Inc*. 344 F.3d 458 (5th Cir. 2003) (applying Mississippi law and holding that a federal district court properly denied the plaintiff's motion for remand because the claims against the non-diverse defendants were time-barred and therefore they were fraudulently joined).

### 2. **Common Defenses Rule**

In addition, three circuits have recognized a "common defenses" rule, which provides that "when a nonresident defendant's showing that there is no reasonable basis for predicting that state law would allow recovery against an in-state defendant equally disposes of all defendants, there is no improper joinder of the in-state defendant." *Smallwood v. Illinois Cent. R.R. Co.,* 385 F.3d 568, 571 (5th Cir. 2004). *See also Boyer v. Snap-On Tools Corp.*, 913 F.2d 108 (3rd Cir. 1990); *In re New England Mut. Life Ins. Co. Sales Practices Litig.*, 324 F.Supp.2d 288 (D.Mass. 2004). As the Fifth Circuit explained:

> [W]hen, on a motion to remand, a showing that compels a holding that there is no reasonable basis for predicting that state

> law would allow the plaintiff to recover
> against the in-state defendant necessarily
> compels the same result for the nonresident
> defendant, there is no improper joinder;
> there is only a lawsuit lacking in merit. In
> such cases, it makes little sense to single
> out the in-state defendants as "sham"
> defendants and call their joinder improper.
> In such circumstances, the allegation of
> improper joinder is actually an attack on
> the merits of plaintiff's case . . .

*Smallwood*, 385 F.3d. at 574.  This rule has been applied to at least one case involving vanishing premium insurance in which the diverse defendant raised a statute of limitations defense. In *In re New England Mutual Life Insurance Company Sales Practices Litigation*, a Massachusetts federal court relied on the common defenses rule to find that the plaintiffs had not fraudulently joined a non-diverse defendant where the plaintiff's claims were based on respondeat superior, thereby requiring remand to state court.

> [I]f no cause of action can be stated
> against the non-diverse defendants for their
> alleged torts, no case exists against
> [defendant] New England. (For example, if a
> statute of limitation has run on a claim
> against a non-diverse defendant, it
> necessarily has run for New England.)
> Accordingly, the arguments offered by New
> England to prove fraudulent joinder
> simultaneously show that no case can be made
> against the diverse defendant.

*In re New England Mut. Life Ins.,* 324 F.Supp.2d at 305.

**3.   Maryland Law**

Under Maryland law, a civil action "shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." Md.Code. Ann., Cts. & Jud. Proc. § 5-101 (2002).  Section 5-101 analysis is subject to the "discovery rule," which states that "the cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser,* 290 Md. 631, 636 (1981). In contract cases, the statute of limitations generally "begins to run from the date of the breach, for it is then that the cause of action accrues and becomes enforc[ea]ble." *Mayor and Council of Federalsburg v. Allied Contractors, Inc.,* 275 Md. 151, 157 (1975) *cert. denied,* 423 U.S. 1017 (1975).

The Court of Special Appeals of Maryland has directly addressed the issue of vanishing premium insurance policies and a statute of limitations defense.  In *Cooper v. Berkshire Life Insurance Co.,* 148 Md.App. 41 (2002), *cert. denied,* 373 Md. 407 (2003), the plaintiff, Joseph Cooper, had purchased two "vanishing premium" second-to-die life insurance policies based on representations by two insurance agents, Thomas Steinhardt and Bernard Fish, that he would pay premiums for only 10 years. The insurance agents, whom Cooper had known for many years and considered to be trustworthy friends, said they were "highly

14

skilled insurance experts" and they encouraged Cooper "to rely on their expertise and prior relationship of trust in choosing a policy." *Id*. at 50. The agents recommended a $1 million "disappearing premium" policy that required Cooper to pay an annual $9,000 premium for nine years. Neither agent showed Cooper a supplemental footnote page or other statements that indicated that the disappear year was not guaranteed. They also showed Cooper the first page of a computer-generated illustration, which stated it was not complete without the accompanying supplemental footnote page. Cooper admitted that the policy appeared "too good to be true." *Id.* at 51.

When the policy arrived, the cover page included a notice of a right to cancel within 10 days. It also included the language that the illustration was not complete without the accompanying supplemental footnote page. The fifth page disclosed that dividends were not guaranteed and that significant changes in interest rates may affect future dividends. When asked whether he made any effort to locate the supplemental footnote page, Cooper was unsure. *Id.* at 51-52. Six years after buying the policy, Cooper learned he would have to pay premiums for many more years than the insurance agents had represented to him. *Id*. at 53. The trial court granted summary judgment on all counts. *Id*.

On appeal, the Court of Special Appeals agreed that claims against the insurance company were properly dismissed because Cooper was obligated to read the policy, which clearly stated that premiums were not guaranteed.  *Id.* at 63.  The appellate court, however, reached a different conclusion with respect to the insurance agents.  The court held that:

> The Coopers alleged that these agents "cultivated a relationship of trust and confidence in the Coopers through their self-proclaimed expertise," and "held themselves out as highly-skilled insurance experts, possessing the special knowledge and expertise needed to interpret and understand the complex and sophisticated funding methods and mechanics of the disappearing premium policies." The Coopers also alleged that these agents were social friends prior to their business relationship . . . .
> These averments, if proven, are sufficient to support a finding that Cooper reasonably expected the insurance agents to notify him if the delivered policy was somehow different from the discussed policy. The question of whether Cooper did reasonably rely on Fish or Steinhardt under these circumstances is, like the question of contributory negligence, a question of fact that defeats summary judgment.

*Id.* at 80-81 (footnote omitted).

On the statute of limitations issue and whether the policy had put Cooper on inquiry notice of claims against the insurance agents, the court held that summary judgment was improper

16

because "a trier of fact determines questions of fact on which a limitations defense turns." *Id*. at 88. In Cooper's case:

> Fish and Steinhardt were friends of Cooper, and held themselves out as experts in the field of life insurance. Reasonable persons could differ as to whether a person of ordinary prudence in Cooper's position would have assumed upon receipt of the $1.5 million policy without contrary notification, that the policies that Fish and Steinhardt procured complied with the promises they made regarding premium payments.

*Id*.   The Court of Special Appeals then distinguished this court's decision in *Thelen v. Massachusetts Mutual Life Insurance Co.*, 111 F.Supp.2d 688 (D.Md. 2000) and another case, *In re Northwestern Mutual Life Insurance Co. Sales Practices Litigation*, 70 F.Supp.2d 466 (D.N.J. 1999), both of which dealt with vanishing premium claims and statute of limitations defenses.  In both cases, the claims were dismissed because the courts found that the policies and other paperwork had put the plaintiffs on notice.

> [T]he claims in *Thelen* and *Northwestern Mut. Life Ins*. were claims against the insurance companies, not against the agents.  As we previously have discussed, Maryland imposes a greater duty on insurance agents than on insurance companies.  The heightened duty owed by insurance agents allows greater reliance by the insured, and creates a correspondingly lesser standard of vigilance in detecting that the issued policy did not live up to the agents' representations.

17

> Given this greater duty, and corresponding greater level of justifiable reliance, we cannot say that Cooper was unreasonable, as a matter of law, in not reading the policy in 1990 and detecting that it did not conform to Fish and Steinhardt's representations.

*Id.* at 89.

Here, Jefferson Pilot offers several arguments why Plaintiffs' claims against Player are time-barred. It first asserts that Plaintiffs were on inquiry notice when they received the policy in 1993 because they had an affirmative duty to read the policy and they admit that when they did read the policy thoroughly they saw it was inconsistent with Player's alleged representations. Second, the 1993 illustration put Plaintiffs on inquiry notice because the illustration showed that the policy would lapse in years 15 or 27, based on interest rates of 5.5% or 6%. Moreover, the illustration specifically stated that current values were likely to change often and "actual policy values as well as premiums required may vary dramatically from this current prediction." (Paper 31, ex. A, at 3). Third, Jefferson Pilot alleges that Milton McGinty made a phone call in 1998 to Leslie Killgore, a registered representative of 1st Global Capital and Certified Financial Planner licensee with Active Wealth Management, Inc., who assisted Player in procuring the policy. Killgore claims that

McGinty expressed concerns about whether the policy was performing as Player had promised and that he would have to pay premiums for more than 10 years and that she told him he may have to pay premiums for more than 10 years. (Paper 31, ex. 2, at 2).  After the call, she allegedly sent McGinty three illustrations that also showed premium payments beyond 10 years.

Plaintiffs respond that the policy and the 1993 illustrations did not provide notice because Player's alleged representations were not clearly untrue at that time; nor was it clear in 1993 that the estate plan was faulty and that the insurance policy was unsuitable for the Trust.  Plaintiffs also submitted an affidavit by Milton McGinty in which he declared that he never spoke with Killgore in 1998 and he never received three illustrations from her.  Finally, Plaintiffs argue that because there are so many factual disputes, Jefferson Pilot has not shown that Plaintiffs cannot prevail on any claims against Player.

This court's holding in *Riverdale Baptist,* the "common defenses" rule, and the *Cooper* decision lead to the conclusion that this court does not have jurisdiction in the present case. The question of whether Plaintiffs' claims against Player are time-barred requires more than a limited piercing of the pleadings,  given the dispute about what Milton McGinty knew or

should have known in 1993.  Also, the common defenses rule argues against jurisdiction because Jefferson Pilot's assertions that Plaintiffs' claims against Player are time-barred are equally applicable to the claims against Player.[9]  Finally, because of the many similarities to the *Cooper* case and factual questions that exist as to whether Plaintiffs were on inquiry notice that put their claims outside the statute of limitations, the court cannot rule out the possibility that they have a colorable cause of action against Player in a Maryland court. Accordingly, Jefferson Pilot has failed to establish fraudulent joinder by demonstrating that "there is *no possibility* that the plaintiff would be able to establish a cause of action against the in-state defendant in state court."  *Hartley,* 187 F.3d at 424.  The court finds that joinder was not fraudulent and the case must be remanded.

**B.   Attorneys fees**

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The court's limited authority "to award fees as a sanction for

---

[9] In their motions to dismiss, both Jefferson Pilot and Player make essentially the same statute of limitations arguments as Jefferson Pilot makes in its opposition to remand. (Papers 19 and 20).

a removal taken in bad faith is widely recognized." *ITT Indus.*
*Credit Co. v. Durango Crushers, Inc.*, 832 F.2d 307, 308 (4th Cir.
1987).   Plaintiffs argue that the removal was improper and
frivolous.   The court disagrees that the removal was frivolous.
Moreover, given the lack of evidence of bad faith on the part of
Defendants, the court will deny this part of the motion.

## IV. Conclusion

For the reasons stated above, this court finds that
fraudulent joinder did not occur so that removal was improper.
Accordingly, the court will GRANT Plaintiffs' motion to remand
and does not reach Defendants' motions to dismiss.   The court
also DENIES Plaintiffs' motion seeking attorneys' fees for the
removal.   A separate Order will follow.

```
              /s/
DEBORAH K. CHASANOW
United States District Judge
October 17, 2005
```